**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ART ASK AGENCY, <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, <br><br> Defendants. | Case No.: 20-cv-1666 <br><br> Judge: Steven C. Seeger <br><br> Magistrate Judge: Maria Valdez |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY TRANSFER OF THE DEFENDANT DOMAIN NAMES, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND SERVICE OF PROCESS BY E-MAIL AND/OR ELECTRONIC PUBLICATION**

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff brings this action against the defendants identified on Schedule A to the Complaint (collectively, the "Defendants") for false designation of origin based on trademark infringement (Count I), copyright infringement (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count III).  As alleged in the Complaint, Defendants are selling unauthorized products that infringe the Anne Stokes trademark and are derivative works of the copyrighted subject matter of ANNE STOKES products, hereinafter referred to as "ANNE STOKES Products.  Defendants are promoting, advertising, marketing, distributing and offering for sale the illegal ANNE STOKES Products using the ANNE STOKES trademark through various fully interactive commercial Internet websites (collectively, the "Defendant Internet

1

Stores"). Defendants' unauthorized conduct is done with the intent to generate profits by infringing Plaintiff's valuable rights.

Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine ANNE STOKES Products while actually selling unauthorized and unlicensed products to unknowing consumers. Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their operation.

Defendants ongoing unlawful activities should be restrained. Plaintiff requests this Court to issue an *ex parte* Temporary Restraining Order. Considering the covert nature of offshore infringing activities and the vital need to establish an economic disincentive for infringement, courts regularly issue such orders. *See, e.g., Pink Floyd (1987) Limited v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* Case No. 18-cv-05562 (N.D. Ill. Aug. 24, 2018); *Entertainment One UK Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* Case No. 18-cv-04926 (N.D. Ill. Aug. 2, 2018); and *Millennium Media, Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* Case No. 18-cv-05856 (N.D. Ill. Sept. 4, 2018).

## II. STATEMENT OF FACTS

### A. Plaintiff's Rights

Plaintiff is in the business of developing, marketing, selling and distributing products associated with fantasy art of British artist Anne Stokes. *See* Declaration of Maria Strid (the "Strid Declaration") at ¶¶ 3-4. Plaintiff is the exclusive licensee of the ANNE STOKES Copyrights. *Id.* at ¶4-5. True and correct copies of copyright registrations for the ANNE STOKES Copyrights are attached to the Strid Declaration as Exhibit 1. Plaintiff has expended substantial time, money and other resources promoting the ANNE STOKES trademark and copyrighted materials. *Id.* at ¶9. As

a result, products bearing the ANNE STOKES trademark and copyrights are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff. *Id.*

### B. Defendants' Unlawful Activities

The success of ANNE STOKES Products has resulted in significant infringement counterfeiting. *Id. at* ¶ 10. Numerous domain names have been identified and linked to fully interactive websites and marketplace listings on platforms which were offering for sale, selling, and importing counterfeit ANNE STOKES Products to consumers in this Judicial District and throughout the United States. *Id.* Internet websites like Defendants' Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. *See* Declaration of Michael A. Hierl (the "Hierl" Declaration) at ¶ 2. According to an intellectual property rights seizures statistics reports issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government during 2017 exceeded $1.2 billion. *Id.* at ¶ 3. Internet websites like Defendants' Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.* at ¶ 4.

### III. ARGUMENT

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b).

A.  **This Court May Exercise Personal Jurisdiction over Defendants**

This Court may properly exercise personal jurisdiction over Defendants since each Defendant has targeted sales from Illinois residents by operating online stores that offer to ship to the United States, including having offered to directly sell infringing ANNE STOKES Products to consumers within the State of Illinois. *See* Complaint at ¶¶ 7 and 9. As a result, courts regularly exercise personal jurisdiction over websites offering for sale and selling infringing merchandise to Illinois residents over the Internet. 735 ILCS 5/2-209(a)(2). *See, e.g., Christian Dior Culture, S.A. v. Liu,* 2015 U.S. LEXIS 158225 (N.D. Ill. Nov. 17, 2015); *Monster Energy Co. v. Chen Wensheng,* 2015 U.S. Dist. LEXIS 132283 (N.D. Ill. Sept. 29, 2015); *Chrome Hearts LLC v. Partnerships & Unincorporated Assns. Identified on Schedule "A",* 2015 U.S. Dist. LEXIS 120232 (N.D. Ill. Sept. 9, 2015).

B.  **Standard for Temporary Restraining Order and Preliminary Injunction**

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

C. **Plaintiff Will Likely Succeed on the Merits**

    i.    <u>Plaintiff Will Likely Succeed on the Merits</u>

A Plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a protectable trademark; and (2) a likelihood of confusion will exist as to the origin of plaintiff's products. *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,*

4

188 F. 3d 427, 436 (7th Cir. 1999). This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *See Neopost Industrie B.V. v. PFE Int'l Inc. Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted). A defendant is liable for trademark infringement under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case for infringement, a plaintiff must show (1) its marks are distinctive enough to be worthy of protection; (2) Defendants are not authorized to use the trademark; and (3) Defendants' use of the trademark causes a likelihood of confusion as to the origin or sponsorship of Defendants' products. *See Neopost Industrie B.V.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted).

Regarding the first two elements, the ANNE STOKES trademark is inherently distinctive and has been continuously used for years. As to the likelihood of confusion analysis, the Seventh Circuit, however, has enumerated seven factors to be used: (1) similarly between the marks; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the mark; (6) actual confusion; and (7) intent of the defendants. *Eli Lilly v. Natural Answers, Inc.,* 233 F.3d 456, 461-462 (7th Cir. 2000). (Citation omitted).

In this case, the likelihood of confusion test is satisfied. Defendants use marks that are identical to the ANNE STOKES trademark on products that are intentionally linked to and intended to trade off the name recognition of Plaintiff's ANNE STOKES Products. In fact, without ANNE STOKES Products, the accused products would have very little value. For example, without the popularity of ANNE STOKES Products, the imagery used by the products would be

meaningless. As such, the first three likelihood of confusion factors weigh heavily in favor of Plaintiff.

Regarding the fourth factor, "where the relevant group of consumers is likely to buy in haste or on impulse, confusion is more likely. *TV Land, L.P. v. Viacom International, Inc.,* 908 F.Supp. 543, 552 (N.D. Ill. 1995). Here, the products at issue are not high in price nor do they require much research. The low level of sophistication results in this factor favoring Plaintiff.

Due to its extensive worldwide exposure to the public, the ANNE STOKES trademark has become famous and is associated with Plaintiff. The trademark is distinctive and signifies to consumers that the accused products are associated with Plaintiff. Thus, the fifth factor, the strength of the mark, also weighs heavily in favor of Plaintiff.

As for the sixth factor, evidence of actual confusion is not needed. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 960 (7th Cir. 1992) (the Seventh Circuit has consistently found that "plaintiff need not show actual confusion to establish a likelihood of confusion."). Because the accused goods are clearly related to ANNE STOKES Products consumers are likely to think that Defendants' products are sponsored or endorsed by Plaintiffs. Thus, the sixth factor weighs in favor of Plaintiff.

Regarding the seventh and final factor, Defendants are intentionally using the ANNE STOKES trademark to benefit and trade off Plaintiff's goodwill and reputation. Therefore, the final factor regarding Defendants' intent also weighs heavily in Plaintiff's favor.

In sum, it is manifestly clear that each of the seven likelihood of confusion factors weighs heavily in favor of Plaintiff, and, therefore, Plaintiff has proved that it has a reasonable likelihood of success on the merits of its trademark infringement claim.

      ii.      <u>Plaintiff Is Likely to Succeed on Its Copyright Infringement Claim</u>

To establish copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.,* 482 F.3d 910, 914 (7th Cir. 2007). Moreover, copyright protection extends to works derived from the original work since Section 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization …, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. Lastly, "when cartoons or movies are copyrighted, a component of that copyright protection extends to the characters themselves, to the extent that such characters are sufficiently distinctive. *Warner Bros. Entm't, Inc. v. X One X Prods.,* 644 F.3d 584, 597 (8th Cir. 2011).

Here, Plaintiff is the exclusive licensee of the registered copyrights in ANNE STOKES Products. Strid Decl. at ¶¶ 5-6. The accused products are derived from the distinctive creative content found in ANNE STOKES fantasy artwork. Therefore, the infringement is clear and establishes that Plaintiff is likely to succeed on the merits of his claim.

      iii.     <u>Plaintiff Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practices Act Claim</u>

In Illinois, courts resolve unfair competition and deceptive trade practices claims "according to the principles set forth under the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Id.* at 579 (citation omitted). The determination as to whether there is a likelihood of confusion is similar under the Illinois Uniform Deceptive Trade Practices Act. *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998). Because Plaintiff has established a likelihood of success on the merits of its trademark and

copyright infringement and counterfeiting claims against Defendants (supra), and the standard is the same under Illinois law, Plaintiff has established a likelihood of success on the merits for its Illinois Uniform Deceptive Trade Practices Act claim.

### D. There Is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

The harm caused by the copyright infringement of ANNE STOKES Products is equally insidious. The ongoing infringement deprives Plaintiff of the ability to control the creative content protected by its copyrights, it devalues the ANNE STOKES brand by associating it with inferior quality goods and it undermines the value of the copyrights by creating the impression that infringement may be undertaken with impunity which threatens Plaintiff's ability to develop additional markets for their products. Strid Declaration ¶¶ 19-20. These are recognized irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.,* 518 F.Supp. 2d 1197, 1219 (C.D. Cal. 2007).

Defendants' unauthorized use of the ANNE STOKES copyrights has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Strid Declaration at ¶¶ 19-20.

These are recognized irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.,* 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) ("In sum, Plaintiffs' have offered two independently sufficient grounds for a finding of irreparable harm. Plaintiffs will suffer irreparable harm because of StreamCast's likely inability to pay for the past and/or future infringements that it has induced. Additionally, StreaCast's inducement has and will continue to irreparably harm Plaintiffs' ability to enforce its exclusive rights."); *Warner Bros. Entm't, Inc. v. WTV Sys.,* 824 F. Supp.2d 1003, 1013-14 (C.D. Cal. 2011) (recognizing that the perception of the ability to infringe copyright protected work undermines the ability to develop and conduct business).

Accordingly, Plaintiff has established that it will be irreparably harmed by Defendants' infringing conduct.

### E. The Balancing of Harms Tips in Plaintiff's Favor

"When considering the balancing of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.,* 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). This is equally true in the copyright context, since Defendants "cannot complain" of being forced to cease their infringement. *Warner Bros. Entm't. Inc. v. WTV Sys.,* 824 F.Supp. 2d 1003, 1014-15 (C.D. Cal. 2011).

### F. Issuance of the Injunction Is in the Public Interest

"[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative

9

energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1255 (3rd Cir. 1983). This is especially true here since protecting the creative content of ANNE STOKES Products extends far beyond protecting the work of the producing studio.

Moreover, courts have long held that "the trademark laws … are concerned not alone with the protection of a property right existing in an individual, but also for the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). In this case, the injury to the public is significant, and the injunctive relief sought is intended to remedy that injury by dispelling the public confusion created by Defendants' actions.

For these reasons, it is respectfully submitted that granting Plaintiff's Motion for Entry of a Temporary Restraining Order is in the public interest.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Marks Is Appropriate

The requested temporary injunction requires the Defendants to immediately cease all use of ANNE STOKES trademark or substantially similar marks on or in connection with all

Defendants Internet Stores and to cease their acts of copyright infringement. Such relief is necessary to stop the ongoing harm to the trademark and copyrights. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the Internet in an anonymous fashion.

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate

Plaintiff requests an *ex parte* restraint of Defendants' assets to preserve the right to an equitable accounting of Defendants' profits pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 504(b). If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in foreign accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court, citing *Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, 527 U.S. at 325 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the

11

authority to freeze the storeowner's assets. *Id.; see also Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question ... were the profits of the [defendants] made by unlawfully stealing [the plaintiff's] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *accord* 5 J. Thomas McCarthy, *McCarthy on Trademark and Unfair Competition* § 30:40 (4th ed. 2013). Also, this Court issued asset restraining orders for entire financial accounts in similar cases. *See, e.g., Pink Floyd (1987) Limited v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* Case No. 18-cv-05562 (N.D. Ill. Aug. 24, 2018); *Entertainment One UK Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* Case No. 18-cv-04926 (N.D. Ill. Aug. 2, 2018); *and Millennium IP, Inc. and Millennium Media, Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* Case No. 18-cv-05856 (N.D. Ill. Sept. 4, 2018).

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

### C. Plaintiff Is Entitled to Expedited Discovery

The Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation

omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As described above, Defendants are using third-party payment processors such as Visa, PayPal, Amazon and Western Union, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their infringing sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). More importantly, as Defendants have engaged in many deceptive practices in hiding their identities and accounts, the seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir.

1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and unfair competition, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g., Oakley, Inc. v. Does 1-100,* Case No. 12-cv-09864 (N.D. Ill. Dec. 14, 2012) (unpublished) ($10,000 bond); *True Religion Apparel, Inc. v. Does 1-100,* Case No. 12-cv-09894 (N.D. Ill. Dec. 20, 2012) (unpublished) ($10,000 bond).

### VI. CONCLUSION

The ANNE STOKES brand is an important part of Plaintiff's business. That the accused products use ANNE STOKES trademark and creative content protected by Plaintiff's copyrights is no coincidence. It is a validation that consumers value these rights. Without entry of the requested emergency relief, the sale of infringing products will continue unabated. Therefore, entry of an emergency *ex parte* order is necessary to protect Plaintiff's rights, to prevent further harm to Plaintiff and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter an emergency Temporary Restraining Order in the form submitted herewith and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Plaintiff intends to present a motion for preliminary injunction.

Respectfully submitted,

Dated: March 18, 2020

By: s/Michael A. Hierl
Michael A. Hierl (Bar No. 3128021)
William B. Kalbac (Bar No. 6301771)
Hughes Socol Piers Resnick & Dym, Ltd.
Three First National Plaza
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100 Telephone
mhierl@hsplegal.com
Attorneys for Plaintiff
ART ASK AGENCY

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Memorandum was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on March 18, 2020.

                                                   s/Michael A. Hierl